**United States District Court**
**for the District of Maryland**

| | |
|---|---|
| ANIMAL WELFARE INSTITUTE, et al.,   ) | |
|                              ) | |
|         Plaintiffs,           ) | |
|                              ) | |
|       v.                   ) | Civ. No. 09-1519 (RWT) |
|                              ) | |
| BEECH RIDGE ENERGY LLC, et al.,   ) | |
|                              ) | |
|         Defendants.        ) | |

**PLAINTIFFS' MOTION FOR EXPEDITED CLARIFICATION AND/OR**
**MODIFICATION OF THE COURT'S JULY 30, 2009 ORDER**

In the Court's July 30, 2009 Order summarizing the actions taken during a telephone status conference on the same day, the Court canceled the August 11 hearing on Plaintiffs' motion for a preliminary injunction, and instead scheduled a consolidated trial and preliminary injunction hearing for October 21-23, 2009.  See D.E. 28.  Although the parties are making progress in working out a schedule for the expedited discovery and other pretrial proceedings that must be completed prior to the rescheduled hearing, the parties disagree as to one important underpinning of the Court's Order: whether Defendants should abide by their *own* July 27, 2009 proposal for how turbine erection would proceed if the Court accepted (as it did) Defendants' request to forgo the preliminary injunction hearing, and instead hold an expedited hearing on the merits.  Accordingly, Plaintiffs respectfully move for expedited clarification and/or modification of the Court's July 30, 2009 Order.  Plaintiffs are requesting expedited consideration of this motion – which merely asks that Defendants comply with their own proposal to the Court

regarding those turbines that would, and would not, be erected prior to the consolidated hearing

Defendants sought – because Defendants have stated that turbine construction may begin as early

as the "end of the week of August 31."  Decl. of David S. Groberg, at ¶ 4 (D.E. 22-15).

In support of this motion, Plaintiffs state as follows:

1.  On July 27, 2009, Defendants filed a "Request for a Telephone Status Conference"

(D.E. 24) in which Defendants offered to refrain from constructing certain wind turbines at issue

in this case if the Court agreed to consolidate Plaintiffs' motion for a preliminary injunction with

a trial on the merits, as provided by Fed. R. Civ. P. 65(a)(2).  Specifically, Defendants stated that

"in the interest of accommodating the Court's suggestion that a Rule 65(a)(2) hearing occur,

Defendants are willing to refrain from erecting [36 enumerated] wind turbines during September

2009 that are currently scheduled for construction . . . Defendants are willing to offer the above-

stated compromise in the interest of an efficient resolution to this litigation . . . ."  Id. at 1-2.

Under Defendants' "compromise" proposal, Defendants could erect, prior to the consolidated

hearing requested by Defendants, 31 of the 67 turbines slated for construction in the first phase of

the project.[1]

2.  As requested by Defendants, the Court conducted a telephone conference with the

parties on July 30.  During that conference, the Court granted Defendants' request for a

consolidated proceeding in lieu of the August 11 preliminary injunction hearing, and the Court

---

[1]  The 36 turbines that Defendants proposed to defer erecting are those generally in closer
proximity to caves where endangered Indiana bats have been known to hibernate.

and the parties agreed to an October 21-23, 2009 trial as the earliest practicable time frame for

such a hearing, to be preceded by expedited discovery and additional pretrial briefs to be filed on

September 25, 2009 and October 9, 2009.  *At no time during the conference did Defendants*

*disavow, abandon, or modify their proposal to refrain from erecting certain turbines if, as*

*Defendants urged, the Court ordered a consolidated hearing pursuant to Rule 65(a)(2)*.

3.  After the conference, the Court issued its written Order canceling the August 11

hearing, and embodying the alternate dates that the Court and the parties had discussed (D.E. 28).

Because the Court had essentially agreed to Defendants' proposal for how the case should be

resolved, Plaintiffs reasonably assumed that Defendants would abide by the terms of that

proposal and at least refrain before trial from erection of the 36 turbines Defendants had

identified in their July 27, 2009 filing.

4.  However, when Plaintiffs sought confirmation of this understanding from Defendants,

Defendants advised Plaintiffs that they do not feel bound by their representation to the Court; that

they will not refrain from construction of the 36 specified turbines; and, accordingly, that

Defendants may complete the *entire first phase of construction* before the Court can hold the

expedited, consolidated hearing.  In short, after having baited plaintiffs and the Court with a

"compromise" proposal of limited turbine erection before an expedited trial, Defendants have

now switched to an unlimited construction schedule that is extremely prejudicial to Plaintiffs'

interests in conserving the Indiana bat and that, in Plaintiffs' understanding, undermines one of

the bases for the Court's July 30, 2009 Order consolidating the preliminary injunction with a

merits trial.

5. Plaintiffs therefore request that the Court clarify and/or modify the terms of its July 30, 2009 Order to make clear that Defendants should abide by their previous proposal.  There are several reasons why this Court should grant such relief.  **First**, defendants' reversal regarding turbine construction contravenes the doctrine of "judicial estoppel," which exists to "protect the integrity of the judicial process," New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal quotation omitted), and "may be invoked to prevent a party from playing 'fast and loose with the courts'" by adopting inconsistent positions in the same or related litigation.  Konstantinidis v. Chen, 626 F.2d 933, 937 (D.C. Cir. 1980).  Although the "circumstances under which judicial estoppel may appropriately be invoked are . . . not reducible to any general formulation or principle," one central "consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  New Hampshire, 532 U.S. at 750; see also In Defense of Animals v. U.S. Dep't of Agriculture, 589 F. Supp. 2d 41, 42-43 (D.D.C. 2008).

6. Here, defendants are seeking both to "derive an unfair advantage" and "impose an unfair detriment" on plaintiffs by taking inconsistent positions on the extent to which turbine erection will occur prior to the Court's holding a consolidated hearing at the earliest practicable time.  Thus, in requesting a new status conference, cancellation of the August 11 hearing, and the holding of a consolidated hearing with expedited discovery, Defendants expressly offered one thing – a "compromise" under which some, but not all, of the turbine erection would occur; yet

as soon as the Court canceled the August 11 hearing and essentially adopted the alternative

approach Defendants advocated, Defendants abruptly jettisoned their own "compromise," and

instead insisted on wholesale turbine construction throughout the project site without any

material change in the factual circumstances.  This is precisely the kind of unfair tactical

maneuvering that the judicial estoppel doctrine is designed to prevent.[2]

7. **Second**, although Plaintiffs recognize and appreciate the Court's admonition, during

the status conference, that Defendants would proceed with any turbine erection at Defendants'

own risk, Plaintiffs nonetheless respectfully submit that Defendants' abandonment of their own

proposed compromise and insistence on *complete* construction prior to the consolidated hearing

sought by Defendants may still prove to be severely prejudicial to Plaintiffs' interests in

protecting the endangered Indiana bat.  Although Plaintiffs of course accept the Court's

assurance that turbine erection would have no bearing on the *Court's* own ultimate resolution of

the merits, Plaintiffs nevertheless believe that full construction of the entire first phase of the

project could severely undermine any ensuing permitting process by the Fish and Wildlife

Service ("FWS") that Congress established for activities that "take" endangered species in the

---

[2] Defendants cannot reasonably rely on the minor difference between an end of September hearing and an October 21-23 hearing – the next time frame the Court had available on its calendar – to argue that it has not taken inconsistent positions.  Once again, Defendants agreed to the October hearing date during the status conference without even intimating that it would result in Defendants abandoning their "compromise" proposal and instead pursuing complete construction.  Moreover, given the extremely expedited discovery and pretrial schedule necessary even to accommodate an October trial date – under which all discovery and other pretrial proceedings must be completed in just a few months – it is apparent that the Court has now scheduled a trial for the earliest practicable date that would allow for the consolidated hearing defendants themselves requested.

course of an "otherwise lawful" activity.  <u>See</u> 16 U.S.C. §§ 1539(a)(1)(B), (2).  Indeed, as other courts have recognized, Congress specifically desired to avoid the bureaucratic "steam rolling [of] activities in order to secure completion of projects regardless of the impacts on endangered species," <u>Fla. Key Deer v. Brown</u>, 386 F. Supp. 2d 1281, 1293 (S.D. Fla. 2005), and that is why Congress prohibited the "irreversible or irretrievable commitment of resources," 16 U.S.C. § 1536(d), to projects that must undergo FWS review.  Accordingly, Defendants' insistence on constructing the entire first phase of the project before the Court even has an opportunity to rule on plaintiffs' take claim not only contradicts the "compromise" proposal that defendants themselves advanced in urging consolidation, but is fundamentally incompatible with the legislative scheme for conserving endangered species that is embodied in the ESA.  <u>See also</u> Plaintiffs' Memorandum in Support of their Motion for a Preliminary Injunction (D.E.16-2), at 43-44.

8.  **<u>Third</u>**, should the Court ultimately sustain plaintiffs' position that, of the more than 100,000 bats that Defendants themselves predict will be killed by the project, at least some of these deaths will be sustained by the Indiana bats who winter in nearby hibernacula and migrate through the project site, the Court could, as a partial remedy, order Defendants to pursue the ESA section 10 permitting process, as other courts have done in comparable circumstances.  <u>See, e.g.</u>, <u>Strahan v. Coxe</u>, 127 F.3d 155, 170 (1st Cir. 1997); <u>Animal Prot. Inst. v. Holsten</u>, 541 F. Supp. 2d 1073, 1081 (D. Minn. 2008).  However, the viability and value of that remedy would obviously be seriously undermined if Defendants are able to construct the entire first phase of the

project, including, for example, by severely limiting, as a practical matter, the siting and design

modifications that the FWS might otherwise consider so as "to the maximum extent practicable,

minimize and mitigate" the impact of the project on Indiana bats.  16 U.S.C. § 1539(a)(2)(B)(ii).[3]

9.  In sum, although plaintiffs believe that no turbine erection should occur before the

Court has had an opportunity to hold the consolidated hearing for which Defendants advocated in

lieu of the August 11 preliminary injunction hearing, at the very least Defendants should be held

to the "compromise" proposal that Defendants themselves proffered to the Court last week in

---

[3]  During the July 30, 2009 telephone conference, Defendants erroneously suggested that the FWS has somehow endorsed defendants' construction of the project or found that it will not harm Indiana bats.  In reality, as set forth in three detailed letters sent by the Service – all of which are attached as Exhibits to Plaintiffs' Preliminary Injunction motion – the Service specifically advised Defendants that there is an "Indiana bat hibernaculum located within five miles of the proposed wind power facility," Doc. 16-22 (3/7/06 FWS letter) at 2; that the "Indiana bat may use the project area for roosting and foraging between April 1 and November 15," id.; that the "Beech Ridge project site may be within the migration path or serve as a foraging area for several bat species, including Indiana [bats]," id. at 5; that the "Service *remains concerned that the proposed Beech Ridge wind power project may harm or kill federally-listed Indiana bats*," Doc. 16-23 at 1 (8/10/06 letter from FWS) (emphasis added); that "potential project-related impacts to bats include direct mortality of bats caused by collisions with the moving turbine blades, displacement of bats due to operating turbines, and degradation of habitat quality due to the construction of the turbines and associated facilities," id. at 2; and that the "only Service permit available to Beech Ridge is the ESA section 10(a)(1)(B) incidental take permit for federally-listed threatened and endangered species."  July 31, 2007 letter from FWS (Attach. H to Exh. 2 in support of Pfs. Mot. for Prel. Inj.).  In addition, the Service "consistently recommended" that Defendants conduct far more extensive surveys for Indiana bats on the project site, id. at 2; see also Doc. 16-22 at 6-7, 9 ("We strongly encourage you to perform the recommended pre-construction studies at the proposed project site in order to identify use by threatened and endangered species"); Doc. 16-23 at 1 ("We also remain concerned that without 3 years of pre-construction surveys, as described in the Service's interim guidance (2003), decisions will be made that will negatively impact federally-listed bats"), and Defendants have consistently *refused* to abide by those recommendations from the expert federal agency before proceeding with turbine erection.  Accordingly, it is simply inaccurate for defendants to represent that the FWS has somehow given its blessing to turbine construction under these circumstances.

urging the Court to alter its approach for resolving the case.

WHEREFORE, Plaintiffs respectfully request that the Court clarify and/or modify its July 30, 2009 Order by providing that, pending trial on the merits, Defendants shall abide by their own proffered "compromise" and refrain from erecting the turbines identified in defendants' July 27, 2009 filing (D.E. 24).  Plaintiffs have contacted Defendants' counsel with regard to this motion, and they have indicated that they oppose it.

Respectfully submitted,

/s/ William S. Eubanks II
William S. Eubanks II
(admitted *Pro hac vice*)
(No. 93342)
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009
(202) 588-5206
(202) 588-5049 (fax)
beubanks@meyerglitz.com


/s/ Eric R. Glitzenstein
Eric R. Glitzenstein
(admitted *Pro hac vice*)
(No. 93343)
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, NW
Suite 700
Washington, DC 20009
(202) 588-5206
(202) 588-5049 (fax)
eglitzenstein@meyerglitz.com

8

/s/ William K. Meyer
William K. Meyer
(Federal Bar No. 01214)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-1240
(410) 659-0436 (fax)
wmeyer@zuckerman.com