# EXHIBIT 16

# Supplemental Declaration of Michael J. Lacki, Ph.D.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| ANIMAL WELFARE INSTITUTE, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | )   Civil No. RWT 09-cv-01519 ) |
| BEECH RIDGE ENERGY LLC and INVENERGY WIND LLC, | ) ) ) |
| Defendants. | ) ) |

### SUPPLEMENTAL DECLARATION OF MICHAEL J. LACKI, PH.D

I, Michael J. Lacki, make this supplemental declaration based upon my personal knowledge and belief and state that:

1. My credentials and expertise are outlined in Paragraphs 1-3 of my original declaration and Attachment A.

2. This supplemental declaration is made based upon my site visit to the Beech Ridge Wind Energy facility and surrounding landscape on September 2, 2009; my review of information available in the published literature; and my review of additional information regarding the proposed location and numbers of Phase II wind turbines.

3. After viewing the netting locations selected by BHE Environmental, it is my assessment that optimal net sites were scarce along the ridge lines where the turbine locations are proposed. BHE Environmental acted properly in its selection of sites for netting by using existing roads and trails which likely could serve as corridors or flyways by local populations of bats. I did observe one water-filled depression along the C line that was not netted, which I would have selected for use; however, at the

1

time of surveys the pond was concealed by forest vegetation and likely was missed by BHE Environmental during the exploratory phase of the netting project. I believe that the amount of netting (27 sites), the temporal variation covered by the netting effort (2005 and 2006), and the height at which netting occurred (up to 30 feet) was more than sufficient to capture Indiana bats (*Myotis sodalis*) if the species was present in the area. A review of the supplemental netting completed along the proposed transmission line corridor (2006) demonstrated a good-faith effort on the part of BHE Environmental to net over streams and ponds, which are rare or absent along the Beech Ridge wind turbine ridge lines. No Indiana bat was captured. Further, netting along the wind turbine ridge lines took place in late July (22-26) in 2005, a period of the summer when spring-born young are likely to be in the early stages of flight. It is far easier to capture volant young than adult bats, especially in July and August in the northern temperate zone, as young bats take several weeks to fully develop both (1) their flight capabilities and maneuverability and (2) their echolocation calls and call recognition patterns. Thus, their absence in the mist net samples during July 2005 is further indication that no maternity site of Indiana bats was present in the vicinity of the proposed Beech Ridge Wind Energy facility at the time of sampling. Further, the absence of available water along the ridge lines refutes the Plaintiffs' claim that suitable habitat exists for the Indiana bat along the Beech Ridge Wind Energy facility. I think it is important to note that expert witnesses for the Plaintiffs have failed to examine or consider evidence associated with the supplemental netting sites along the Beech Ridge Wind Energy facility transmission line corridor.

    4.    After viewing the local habitat conditions on the ridge lines associated with the Beech Ridge Wind Energy facility, my conclusion is that there exists minimal habitat for the Indiana bat. I did observe a few small patches (i.e., approximately 1 acre in size) of suitable roosting habitat along the C

2

and E lines, but these represent isolated parcels within a larger matrix of heavily degraded conditions due to the extensive history of site disturbance, including logging by MeadWestvaco and historic surface mining by local mining operators. In my opinion, most of these sites were never adequately reclaimed. I believe the extensive history of mining and logging in and around the vicinity of the Beech Ridge Wind Energy facility has already degraded the habitat conditions to the point where use of this area by the Indiana bat for foraging or roosting is extremely unlikely. This is especially the case along the A line (Phase I) and D line (Phase II), the two lines closest to the abandoned Indiana bat hibernaculum (Bob Gee Cave) and inhabited Indiana bat hibernaculum (Snedegar's Cave), respectively. I offer the following photos of local (Photo Exhibits A and B) and surrounding (Photo Exhibits C and D) habitat conditions along the D line in support of my view and conclusions.

5. The large body of literature that has accumulated to date on behavior and habitat use of the Indiana bat strongly suggests that these bats are primarily associated with healthy forested environments at low to mid-elevations, where water is available to provide drinking sites and sources of insect prey in the vicinity of maternity roosts. Studies have demonstrated the importance of moths in the diet of Indiana bats. The loss and degradation of forested habitats surrounding the Beech Ridge Wind Energy facility suggests to me that the availability of moth prey is likely to be extremely low in this area, due to historic and recent disturbances to local plant communities. I suggest that cooler temperatures, higher wind speeds, reduced prey populations, and shortages of roosting sites all contribute to habitat conditions at the Beech Ridge Wind Energy facility that are grossly inadequate to support populations of the Indiana bat.

6. As part of my assessment, I reviewed maps of the landscape surrounding the proposed Beech Ridge Wind Energy facility and conducted a driving tour throughout the surrounding landscape.

My determination, based on this information, further suggests that use of the Beech Ridge Wind Energy facility by Indiana bats is highly unlikely for the following reasons. First, the known population of hibernating Indiana bats in Snedegar's Cave is situated 6.7 miles from the closest proposed wind turbines (D line). The landscape between Snedegar's Cave and the D line is comprised of a series of mountains that form a barrier to movement from the cave in a westerly direction. These barriers include from north to south: Sugartree Bench Mountain, the Yew Mountains, Kennison Mountain, Short Mountain, and Loop Mountain. It is my professional opinion, based on over 10 years of landscape-level studies of bats in the Appalachians, the Sierra Nevadas, the Cascades, and the Rocky Mountains that bats rarely travel over mountain tops and ridges to reach other watersheds, but instead remain within the watershed where they roost. In this particular case – assuming Indiana bats even do remain and do not migrate out of the region in summer – I would predict a similar pattern for the Indiana bats in Snedegar's Cave that remain in the local area year-round. A population of 250 bats is not large and is smaller than many of the tree-roosting maternity populations I have studied elsewhere, where the behavior of the bats was consistent with the statement made above. It is my professional opinion that the number of Indiana bats in Snedegar's Cave is not large enough to require flight by these bats beyond a 5-mile radius from the cave to achieve the life requisites necessary to sustain them throughout the summer growing season. Second, there is an abundance of suitable habitat for Indiana bats within the valley and region surrounding Snedegar's Cave – enough that I am convinced that the local population of bats would most likely remain in the surrounding vicinity, including during the periods of swarming in autumn and staging in spring. If sufficient suitable habitat exists surrounding Snedegar's Cave, why would bats travel several miles just to occupy marginal or unsuitable habitats elsewhere? I suggest that bats, including Indiana bats, organisms with approximately 50 million years of evolutionary history

behind their development, would not exhibit such maladaptive behavior; otherwise, they would have disappeared from our planet long ago. Snedegar's Cave is situated at the base of Droop Mountain, which along with Ballard and Brush Mountains impedes the flight path of Indiana bats to the east and south. Regardless, three to five miles of suitable habitat exists to the west between Snedegar's Cave and the string of mountains that form a barrier between the roosting site and the proposed Beech Ridge Wind Energy facility. Thus, in my opinion, there is no reason to believe that Indiana bats hibernating in Snedegar's Cave would ever consider traveling to habitats associated with the proposed Beech Ridge Wind Energy facility – especially when travel would require ignoring three to five miles of suitable habitat along the flight path, followed by flight overtop mountains, where risks associated with wind, inclement weather, and exposure to predators would increase the likelihood of mortality before even reaching the Beech Ridge Wind Energy facility. Expert witnesses for the Plaintiffs have failed to examine and consider evidence associated with landscape issues in this case, but instead have focused on local habitat conditions at netting sites only. This is an extremely shortsighted view of the issue and, in my opinion, has led to uninformed and erroneous conclusions on their part.

7.  It is my professional opinion that the likelihood of injury to or death of an Indiana bat by the proposed Beech Ridge Wind Energy facility is extremely low. The site visit only further confirmed this opinion. The number of hibernating Indiana bats in the region is small, the location of the closest occupied hibernaculum to the facility is surrounded by miles of suitable habitat, the distance between the hibernating population and the facility is longer than typical movements of these bats from roosting sites, the flight path between the roosting site and the facility is impeded by a series of mountain barriers, the local habitat conditions at the facility are highly degraded, and the facility is planned for higher elevations (averaging 3,800 feet) than are used by Indiana bats for roosting and foraging.

5

Additionally, to my knowledge, data collected at numerous wind power facilities across the distribution of the species have demonstrated no Indiana bat mortalities, and the closest known maternity site of Indiana bats in the region is in Boone County over 50 miles west of the proposed facility, further suggesting that injury to or death of Indiana bats from the Beech Ridge Wind Energy facility is unlikely.

8. The Defendants have clearly offered up front to mitigate potential loss of bats through adaptive management should injury to or death of endangered bats be observed in post-construction surveys. A recently published study (Exhibit E) has demonstrated that advances are being made rapidly to reduce the extent of bat mortalities at wind power facilities. In that study, the authors were able to demonstrate a reduction in mortalities of bats as high as 60 percent due to feathering and alterations of the turbine blade design. This suggests that, with further research, alternative energy sources, such as wind power, may be able to be implemented in such a way as to minimize the loss of animals, both birds and bats. In closing, I wish to add that had I been contracted to evaluate the use of habitat by Indiana bats across the region enclosing the proposed Beech Ridge Wind Energy facility, the very last place I would direct my efforts to catch and study these bats would be high-elevation habitats where forests are damaged, degraded, or otherwise absent due to logging and surface mining.

9. My compensation for serving as an expert witness in this matter is $250/hour.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

                                                           /s/*
                                         Michael J. Lacki

\* Counsel hereby certifies that she has a signed copy of the foregoing document available for inspection at any time by the Court or a party to this action.

Executed on this 4th day of September 2009.

7