UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANIMAL WELFARE INSTITUTE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 09-1519 (RWT) |
| ) | |
| BEECH RIDGE ENERGY LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## STIPULATION

WHEREAS, in view of the Court's December 8, 2009 Memorandum Opinion and Order ("Mem. Op. and Order"), and particularly the Court's invitation to the parties to confer on whether they could agree on terms for further turbine operation while Defendants are pursuing an Incidental Take Permit ("ITP") for the Beech Ridge Wind Energy project ("the project"), see D.E. 62 at 71 (a map reflecting the current and proposed turbine layout of the project is attached at Exhibit A), the parties have now engaged in extensive discussions in an effort to arrive at a resolution of this case without the need for further legal proceedings; and

WHEREAS the parties have arrived at what they believe is a mutually satisfactory agreement that allows some additional turbine construction and operation to go forward while ameliorating the project's impact on Indiana bats and adequately protecting the bat during the time that Defendants are seeking an ITP;

THEREFORE, the parties hereby stipulate as follows, subject to the approval and entry of an Order by the Court, that

1.     Defendants will permanently abandon (i.e., Defendants will not construct, nor

operate, nor enter into any arrangement with any other company for construction or operation of) the following turbines (as set forth in Exhibit A to this Stipulation): turbines A 1-10, B-8, all turbines in the C line, and all turbines in the D line.  The parties agree that abandonment of these turbines reflects an undertaking by Defendants to ameliorate the project's potential impact on Indiana bats, and that this should be taken into account by the Fish and Wildlife Service ("FWS") in its review of Defendants' request for an ITP.

2. Pending receipt of an ITP, Defendants may operate the 40 turbines the construction of which was permitted by the December 8, 2009 Mem. Op. and Order only during the Indiana bat hibernation period (i.e., from November 16 to March 31 of each year), and during daylight hours at other times of the year (i.e., between one-quarter hour after sunrise and one-half hour before sunset, utilizing an agreed-upon published source for such times).  Pending issuance of the ITP, Defendants will provide an agreed-on representative of Plaintiffs with weekly e-mail confirmation of each turbine's start and stop times related to sunrise and sunset between April 1 and November 15, and will also provide a representative of Plaintiffs with monthly reports enumerating the time periods of turbine operation related to sunrise and sunset between April 1 and November 15.

3. Pending receipt of an ITP, Defendants may construct and operate 17 additional Phase I turbines subject to the same time-of-year and time-of-day restrictions as set forth in ¶ 2. None of these turbines can be those set forth in ¶ 1.

4. Pending receipt of an ITP, Defendants may construct and operate 10 of the presently planned Phase II turbines (except for those set forth in ¶ 1), subject to the same time-of-year and time-of-day restrictions as set forth in ¶ 2.  Any additional land clearing that is necessary

for construction of these turbines must occur during the Indiana bat hibernation period or, if outside the hibernation period, with the express written approval of the FWS. Such approval letters related to clearing shall be provided to an agreed-on representative of Plaintiffs prior to any clearing.

5. Other than as set forth in ¶¶ 2-4, Defendants may not engage in any further land clearing, construction, or operation of turbines prior to receipt of an ITP in connection with the project. Subject to the FWS's authorization in an ITP or amendment(s) to an ITP, Defendants may construct and operate up to 33 additional turbines within the area approved by the West Virginia Public Service Commission ("PSC"), but not within the same areas as the A, B, C, or D lines. The delineation of where such turbines may be built (subject to the FWS's authorization) is set forth in Exhibit A.

6. Defendants will, by no later than 90 days after the FWS announces a final decision on Defendants' application for an ITP, "decommission" the foundations at turbines sites A 1-10, following the requirements of the June 2008 Decommissioning Report filed by Defendants with the PSC. Should Defendants decide to abandon their effort to obtain an ITP, Defendants will decommission these turbine sites within 90 days following such abandonment. In the event that Defendants believe that their abandonment of the ITP Process was due to Plaintiffs' breach of this Stipulation, Defendants shall follow the process for obtaining relief set forth in paragraph 15. Upon request by Plaintiffs, the parties will arrange for a mutually agreeable time for an inspection of the decommissioned sites.

7. With regard to the ITP Process (which includes but is not limited to the preparation by Defendants of a Habitat Conservation Plan for the Beech Ridge project area,

pursuit of an ITP for the Beech Ridge project (including Phase I and Phase II turbines), and any National Environmental Policy Act ("NEPA") compliance pursuant to or related to the foregoing) that Defendants will pursue in an effort to obtain an ITP for project operation at times other than those set forth in this Stipulation, the parties agree as follows:

(a) To the extent that Plaintiffs participate in the ITP Process, they will use best efforts to play a constructive, cooperative role in the Process by making their views on pertinent issues (e.g., monitoring, adaptive management, etc.) known to Defendants and/or the FWS as early in the ITP Process as practicable. Such views will have a reasonable, good faith scientific basis and will not be propounded for the mere purpose of delaying the ITP Process or advancing any cause other than the welfare of the Indiana bat or other wildlife which is found at the project site and for which published or other evidence with a good faith scientific basis exists indicating that such wildlife may be significantly adversely affected by the project.

(b) Plaintiff Mountain Communities for Responsible Energy ("MCRE") and its voting members agree not to participate in the ITP Process (other than communications regarding Indiana bat or other wildlife impacts with other Plaintiffs), and will not challenge the FWS's issuance of an ITP. Upon the parties' execution of this Stipulation, Plaintiffs will provide to Defendants a letter from MCRE setting forth that organization's voting members. Plaintiffs Animal Welfare Institute ("AWI") and/or Dave Cowan reserve the right to participate in the ITP Process as provided by Paragraph 7(a) and to challenge the FWS's issuance of an ITP, but they, as well as Defendants, agree that they will not challenge FWS's findings and conditions concerning the basic configuration of the turbines, nor will they challenge the FWS's decision to incorporate any elements of this Stipulation into an ITP, including the daytime operation

4

conditions set forth in paragraph 2. Plaintiffs also agree not to request (directly or indirectly through a third party) more than a minor extension in any public comment period during the ITP Process, including that for the NEPA document.

8. Other than as provided for in this Stipulation, Plaintiffs, including voting members of MCRE, will not pursue or participate in any federal, state, or local administrative process (including but not limited to the PSC) in an effort to block project construction or operation. Plaintiffs, including voting members of MCRE, further agree not to file any complaints with the PSC arguing that Defendants have failed to comply with any of the Preconstruction or Operating Conditions of the PSC Siting Certificate for the project, or that Defendants should be required to take on any further obligations or requirements in order to continue construction or operation of the project beyond the obligations set forth in this Stipulation, the PSC permit, and the ITP (other than advocacy before the FWS in the ITP process as provided in Paragraph 7 above). Other than as provided for in this Stipulation, Plaintiffs, including voting members of MCRE, agree not to knowingly offer material assistance (including any legal assistance or funding targeted at project opposition or delay, or provision of non-public records in their possession or control that were specifically collected for use in any administrative or legal proceeding related to the project) to any third parties who seek to oppose or delay the project before the PSC or any other federal, state or local agencies.

9. Except as previously provided, Plaintiffs, including voting members of MCRE, agree not to challenge the project in any state or federal judicial tribunal or to knowingly provide material assistance (including any legal assistance or funding targeted at project opposition or delay, or provision of non-public records in their possession or control that were specifically

collected for use in any administrative or legal proceeding related to the project) to others in initiating or pursuing legal action against the project in any state or federal tribunal.

10. Plaintiffs, including voting members of MCRE, agree not to pursue any legislative proposal the primary purpose of which is to block or delay completion of the project. Nothing in this Stipulation precludes statements to a legislative body or in any other forum on any matter of public policy concerning wind power in general or any other subject.

11. Plaintiffs agree that any legal counsel who have represented Plaintiffs in this proceeding will not represent or assist any other third parties in efforts to oppose the project and seek legal advice or representation regarding the project.

12. Except as otherwise provided in this Stipulation, Plaintiffs, including voting members of MCRE, agree not to oppose the project at official meetings of local, state or federal government/regulatory bodies/agencies, including the County Commission and City Council, where one purpose of the official meeting is to address whether the project should be constructed or operated.

13. The parties agree not to challenge any aspect of the Court's December 8, 2009 Mem. Op. and Order in the United States Court of Appeals for the Fourth Circuit. Defendants agree that their pending Motion for Reconsideration should be deemed moot upon approval of this Stipulation by the Court.

14. The parties will endeavor to come to an agreement on Plaintiffs' outstanding claim for attorneys' fees and costs pursuant to 16 U.S.C. § 1540(g)(4). If the parties are unable to reach such an agreement, Plaintiffs will submit their application to the Court by no later than March 1, 2010.

15.     In the event that either party believes that another party has violated the terms of this Stipulation, the party asserting the violation will provide written notice to below-signed counsel for the opposing parties. If the matter is not satisfactorily resolved between the parties within 30 days after such notice has been received, the party asserting the violation may petition the Court for appropriate relief, including by requesting that the Court terminate all or certain terms of this Stipulation. In the event that either party believes that the terms of this Stipulation should be modified based on new circumstances or any other factors, the party seeking such modification will provide written notice to below-signed counsel for the opposing parties. If the parties cannot agree within 30 days following receipt of such notice to seek joint modification of the Stipulation, the party seeking modification may petition the Court for appropriate relief.

16.     The parties agree to issue a joint statement to the public announcing this Stipulation upon its approval and entry by the Court.

17.     Upon approval and entry by the Court, this Stipulation will supersede to the extent necessary the Court's December 8, 2009 remedial Order.

18.     The provisions of this Stipulation are designed to address the specific factual circumstances of this case, and are not intended by the parties to establish any precedent for the terms or conditions under which any other project should be constructed or operated.

Respectfully submitted,

　　　/s/　　　　　　　　　
Eric R. Glitzenstein (admitted *pro hac vice*)
William S. Eubanks II (admitted *pro hac vice*)
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue NW, Suite 700
Washington, DC 20009

Telephone: (202) 588-5206
Facsimile: (202) 588-5049 (fax)
beubanks@meyerglitz.com
eglitzenstein@meyerglitz.com

William K. Meyer
(Federal Bar No. 01214)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-1240
(410) 659-0436 (fax)
wmeyer@zuckerman.com

*Attorneys for Plaintiffs*

     /s/     (with permission)
Kirsten L. Nathanson (D. Md. Bar No. 14236)
Steven P. Quarles (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
knathanson@crowell.com

*Attorneys for Defendants*

So Ordered:

_____
U.S. District Judge
Dated: January  , 2010